IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00618-RJC-WCM

| | |
|---|---|
| NANCY GEORGION;<br>SUSAN PURDY;<br>THAN SILVERLIGHT;<br>CHRISTINA SMITH; and<br>DONNA WILLIAMS<br>*on behalf of themselves and*<br>*all others similarly situated*,<br><br>           Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION,<br><br>           Defendant. | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on a Motion to Dismiss (Doc. 11) filed by Defendant Bank of America Corporation ("BAC"). The Motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.     Relevant Procedural Background

On November 11, 2022, Plaintiffs Nancy Georgion ("Georgion"), Susan Purdy ("Purdy"), Than Silverlight ("Silverlight"), Christina Smith ("Smith"), and Donna Williams ("Williams") filed this action on behalf of themselves and all others similarly situated.

On January 10, 2023, BAC filed the Motion to Dismiss. Doc. 11. Plaintiffs have responded, and BAC has replied. Docs. 26, 27.

## II. Plaintiffs' Allegations

Plaintiffs' claims arise out of Bank of America's alleged use of Zelle, an electronic payment system developed by the major banks to compete with consumer payment systems such as PayPal, Venmo, and CashApp.[1] Doc. 1 at ¶ 1.

### A. Early Warning Services and Zelle

Plaintiffs allege that Early Warning Services, LLC ("Early Warning") is a privately held financial services company owned by Bank of America and other banks. Doc. 1 at ¶ 28. Early Warning's principal asset is Zelle. Id.

Zelle is a "peer to peer" payment service that allows "Network Banks" to "handle transfers without paying" third party fees. Id. at ¶ 36. Zelle marketed itself as being "'faster' and 'safer' than its competition…because it is 'backed by the banks.'" Id. at ¶ 37; see also id. at ¶¶ 38-40 (alleging advertisements and public interviews in which Zelle was touted as safe, secure, and backed by the banks).

---

[1] As discussed below, BAC contends that the Complaint names the wrong party defendant, and that "any banking relationship is between Plaintiffs and Bank of America, N.A." ("BANA"). Doc. 11-1 at 16.

2

Although Zelle was created to compete with other peer to peer payment services, it differs from those services "in several important respects." Id. at ¶ 43.

First, "the transfer goes immediately from bank account to bank account – there is no entity holding onto the money while the transaction is verified or before it's collected by the recipient…. Instead, the money transfers immediately from a BOA customer's bank account to the recipient's bank account." Id. at ¶ 43. Because Zelle transfers occur in "real-time," Plaintiffs characterize the transfers as "immediate and unrecoverable." Id. at ¶ 51.

Second, Zelle is "automatically integrated" into customer's bank accounts (including those customers who are not aware of the Zelle feature in their online accounts), is "always on," and cannot be removed or disabled by the customer. Id. at ¶¶ 44, 45, 48.

Despite BAC's awareness that its customers are losing "tens of millions of dollars every year specifically due to *unauthorized* transactions via Zelle," BAC "makes repeated promises on its website, app, and elsewhere that Zelle is a 'fast, safe and easy way to send and receive money,' and that its online banking offers a 'secure, convenient experience.'" Id. at ¶¶ 5 (emphasis in Complaint), 62; see also ¶ 63 (quoting BAC's "digital webpage"); ¶¶ 67-69 (alleging that BAC knows Zelle is not secure based on consumer complaints and numerous news reports). Further, Plaintiffs allege that BAC's marketing

3

does not "warn potential [Bank of America] customers of the risks of being scammed by persons impersonating their banks due to Zelle." Id. at ¶ 70.

Additionally, "Bank of America prominently displays that it ***guarantees*** customers security on the online and mobile bank website." Id. at ¶ 75 ("You can confidently use Online or Mobile Banking – we guarantee that you will not be liable for fraudulent transactions when reported promptly….") (emphasis in Complaint); ¶ 76 ("***you are not liable for unauthorized transfers*** or bill payments made via Online or Mobile Banking is reported promptly"); (emphasis in Complaint) ¶ 77 ("You're never liable for unauthorized purchases or transactions – as long as they're reported promptly").

Bank of America's Online Banking Service Agreement (the "Online Service Agreement") "also repeatedly promises users that, if they timely report fraud, that they will not be liable *at all* for fraudulent transfers, without limitation." Id. at ¶ 79 (quoting the Online Service Agreement, Section 7(B) ("….***You will have no liability for unauthorized transactions if you notify us within 60 days….***") (emphasis in Complaint).

Plaintiffs allege that the Online Service Agreement requires BAC to conduct a reasonable investigation when a customer reports an error, to provisionally credit the customer's account during that investigation, and to provide the customer with the documents BAC used during that investigation. Id. at ¶ 80 (quoting Section 7(A) of the Online Service Agreement).

4

Finally, Plaintiffs contend that BAC "falsely tells customers that it will protect users by verifying the identity of the person receiving money through Zelle." Id. at ¶ 83.

Plaintiffs allege that, despite these assurances, BAC has a policy of denying claims arising from Zelle transactions and that BAC refunded "less than 45% of the overall dollar value of claims made" during the period between January 2021 and September 2022. Id. at ¶¶ 85, 86, 87.

### B. Plaintiffs and Their Claims

In overview, Plaintiffs, who are Bank of America account holders, allege that they were victims of fraud perpetrated by third parties who used Zelle to instantly and permanently transfer money out of Plaintiffs' Bank of America accounts (the "Transfers"), and that Bank of America's response to Plaintiffs' reports of this fraud were inadequate and contrary to Bank of America's previous representations. Id. at ¶¶ 12-26.

Plaintiffs assert a claim based on violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq. ("EFTA") and the EFTA's associated regulations, as well as claims for breach of the Online Service Agreement, breach of the implied covenant of good faith and fair dealing, and, to the extent

5

Case 3:22-cv-00618-RJC-WCM Document 28 Filed 08/29/23 Page 5 of 14

applicable to each Plaintiff, violations of state specific consumer protection laws.[2]

## III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] Each Plaintiff seeks to represent a nationwide class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). See Doc. 1 at ¶ 109. Additionally, each Plaintiff seeks to represent a sub-class based on his or her state of citizenship: Georgion (South Carolina); Purdy (New York); Silverlight (California); Smith (Michigan); and Williams (New Jersey). Id. at ¶¶ 110-114.

6

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Materials Considered

BAC has attached the following documents to its Motion to Dismiss:

> Exhibit 1 (Doc. 11-3): described as a screenshot of a webpage cited in Plaintiffs' Complaint at Doc. 1 at ¶ 77, n. 30.
>
> Exhibit 2 (Doc. 11-4): described as a screenshot of a webpage cited in Plaintiffs' Complaint at ¶77, n. 28.
>
> Exhibit 3 (Doc. 11-5): the Online Service Agreement, effective February 18, 2022, and which BAC asserts was operative at the time of the Transfers challenged by Georgion, Silverlight, Smith, and Williams.[3]
>
> Exhibit 4 (Doc. 11-6): described as a screenshot of a Bank of America webpage entitled "How to Avoid Scams."
>
> Exhibit 5 (Doc. 11-7): described as a screenshot of a Bank of America webpage providing an overview of the online security center.
>
> Exhibit 6 (Doc. 11-8): described as a screenshot of a Bank of America webpage describing Zelle.

---

[3] BAC states that a new version of the Online Service Agreement became effective on May 20, 2022 and was applicable at the time of the Transfer challenged by Purdy, but that the relevant language in both the February and May Online Service Agreements is the same. Plaintiffs have not contested these assertions.

7

BAC contends that these exhibits are sufficiently referred to in Plaintiffs' Complaint such that they may be considered in conjunction with the Motion to Dismiss. BAC further contends that various warnings included in these exhibits describe the circumstances of fraud alleged by each named Plaintiff, such that Plaintiffs should have been aware of the potential scams about which they now complain.

Plaintiffs object to the Court's consideration of the exhibits, other than the Online Service Agreement. In particular, Plaintiffs assert that the screenshots of the webpages submitted by BAC are not authenticated, are not referenced in the Complaint, and post-date the fraudulent transactions supporting Plaintiffs' claims.

For purposes of this Memorandum, the undersigned has considered the Online Service Agreement. The undersigned has also considered language from Bank of America webpages, but only to the extent it is quoted in the Complaint. See Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396 (4th Cir. 2006); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); cf. Presnell v. Snap-On Securecorp, Inc., 583 F.Supp.3d 702, 707 n. 2 (M.D.N.C. 2022) (considering website where both parties "cited to the website and presented their arguments as though they agree that the current website information fairly reflects the information available in 2018" and "neither

party has challenged the documents' authenticity or objected to their consideration").

## V. Discussion

### A. The Proper Party Defendant

Plaintiffs have chosen to name a single defendant—BAC.

As its opening argument in connection with the Motion to Dismiss, BAC contends that Plaintiffs have named the wrong defendant; BAC says that the Online Service Agreement is "clear that any banking relationship is between Plaintiffs and Bank of America, N.A., not Bank of America Corporation, a holding company." Doc. 11-1 at 16.

Plaintiffs have not responded to this argument in any fashion.

Plaintiffs did not amend their Complaint as a matter of right in response to the Motion to Dismiss, nor did they seek to substitute BANA or any other entity in place of BAC with BAC's consent. See F.R.C.P. 15(a); Brempong v. Bank of America Corporation, No. 8:10-cv-2046-RAL-TGW, 2010 WL 4620698 (M.D. Fla. Sept. 20, 2010) (Joint Stipulation for Substitution of Party-Defendant and Dismissal of Bank of America Corporation without Prejudice, order adopting Joint Stipulation signed September 21, 2010.)

Next, when Plaintiffs responded to the Motion to Dismiss, they did not address this argument.

Later, when BAC replied and stated that "Plaintiffs do not even acknowledge this argument, let alone rebut it," and argued that "Plaintiffs have conceded that they have not been injured by any action of BAC, the Defendant, and the Complaint should be dismissed in its entirety," see Doc. 27 at 7-8, Plaintiffs again made no response—they did not move for leave to file a surreply or for leave to amend their Complaint.

Therefore, the undersigned can only assume that Plaintiffs concede the merits of BAC's position regarding the proper defendant. See Campbell v. Rite Aid Corp., No. 7:13-cv-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) (holding that, where the plaintiff failed to respond to an argument in the defendant's motion to dismiss, "the Court can only assume that Plaintiff concedes the argument"); Radchyshyn v. Allstate Indem. Co., No. 1:14-CV-00169-MR-DLH, 2014 WL 4406994, at *4 (W.D.N.C. Sept. 8, 2014) ("Plaintiff seemingly concedes the merits of Defendant's motion by failing to respond to the Motion to Dismiss."); Ali v. D.C. Court Servs., 538 F.Supp.2d 157, 161 (D.D.C. 2008) ("If a plaintiff ... files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); see also William Kramer & Associates, LLC v. United States, et al, No. 8:08–cv–640–T–24 MAP, 2008 WL 5051429, at *2 (M.D. Fla. Sept. 10, 2008) ("the United States argues that the Department of Treasury and the IRS are not proper

10

defendants. WKA has not responded to this argument, and as such, the Court presumes that WKA concedes that the Department of Treasury and the IRS are not proper defendants. Accordingly, the Court dismisses WKA's claims against them.").

In addition to Plaintiffs' silence, there is information in the record to support BAC's position. Specifically, the Online Service Agreement states that it is made by the customer and "Bank of America, N.A." See Doc. 11-5 at 1(A); see also In re ATM Fee Antitrust Litigation, 768 F.Supp.2d 984, 999 (N.D. Cal. 2009) ("[Bank of America Corporation] is a bank holding company, not a bank."); Griffin v. Green Tree Servicing, LLC, No. CV 14-09408-MMM (VBKx), 2015 WL 10059081, at *5 (C.D. Cal. Oct. 1, 2015) (dismissing plaintiff's claims against Bank of America Corporation where plaintiff conceded that Bank of America N.A. was the correct defendant).

Consequently, the undersigned will recommend that Plaintiffs' complaint against Bank of America Corporation be dismissed.

### B. Alternative Recommendations

Bearing in mind that for purposes of a motion made under Rule 12(b)(6) the factual allegations of the complaint are viewed in the light most favorable to the plaintiff, the undersigned has closely considered whether to make alternative recommendations regarding the disposition of the Motion to Dismiss.

In that regard, Plaintiffs' Complaint does allege that BAC, rather than BANA, was the entity that developed and embedded Zelle in Bank of America customers' online banking accounts.

However, the allegations in a plaintiff's complaint need not be taken as true when specific information from a contract is provided and is contradictory to those allegations and here, as noted above, the Online Service Agreement says plainly that the Agreement is between BANA and Plaintiffs. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," nor should courts "accept as true allegations that contradict matters properly subject to judicial notice or by exhibits") (citations omitted); Tinsley v. OneWest Bank, FSB, 4 F.Supp.3d 805, 819 (S.D.W. Va. 2014) ("When a document is properly considered in the context of a motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails").

Further, even if the express terms of the Online Service Agreement were disregarded, suggesting alternative recommendations for the disposition of Plaintiffs' claims would be tantamount to providing advisory opinions on the interpretation of the EFTA and associated regulations and on tort and statutory claims under the laws of multiple states—all claims that Plaintiffs have by their silence conceded have been made against the incorrect party.

12

Case 3:22-cv-00618-RJC-WCM Document 28 Filed 08/29/23 Page 12 of 14

The undersigned will, however, recommend that Plaintiffs be given leave to file an Amended Complaint that names any appropriate defendant. Cf. Walsh v. Lovin Construction Company, Inc., No. 1:21-cv-00360-MR-WCM, 2022 WL 2135006 (W.D.N.C. June 13, 2022).

## VI. Recommendations

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 11) be **GRANTED**, and that Plaintiffs' Complaint asserting claims against Bank of America Corporation be **DISMISSED**.

The undersigned **FURTHER RECOMMENDS** that Plaintiffs be given thirty days to file an Amended Complaint that names any appropriate defendant.

Signed: August 29, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).