**NANCY GEORGION, SUSAN PURDY, THAN SILVERLIGHT, CHRISTINA SMITH AND DONNA WILLIAMS,** *on behalf of themselves and all others similarly situated,*

      Plaintiffs,

v.

**BANK OF AMERICA, N.A.,**

      Defendant.

**OPINION & ORDER**

Dated: August 18, 2025

Andrew J. Brown and Brian J. Ellsworth, Law Offices of Andrew J. Brown, of San Diego, CA, and Rashad Blossom, Blossom Law PLLC, of Charlotte, N.C., for representative plaintiffs Nancy Georgion, Susan Purdy, Than Silverlight, Christina Smith and Donna Williams.

Matthew D. Benedetto, of Los Angeles, CA, Noah A. Levine, of New York, N.Y., and Benjamin Chapin, of Washington, D.C., Wilmer Cutler Pickering Hale and Dorr LLP, and Kobi K. Brinson, Winston & Strawn LLP, of Charlotte, N.C., for defendant Bank of America, N.A.

Timothy M. Reif, Judge, United States Court of International Trade:

      Reif, Judge:  Before the court is the motion to dismiss of defendant Bank of

America, N.A. ("defendant" or "Bank of America") and the Memorandum and

Recommendation ("M&R") of the Magistrate Judge, in which the Honorable W.

Carleton Metcalf recommended that the court grant in part and deny in part

defendant's motion.

    For the reasons that follow, the court sustains defendant's objections and

modifies the M&R, as described below.

## BACKGROUND

    Parties do not contest the factual and procedural background as related in

the M&R. Therefore, the court summarizes the factual background only to the

extent necessary to resolve defendant's objections to the M&R.

## I.    Parties

    Plaintiffs Nancy Georgion, Susan Purdy, Than Silverlight, Christina Smith

and Donna Williams (collectively, "plaintiffs") are residents of the states of South

Carolina, New York, California, Michigan and New Jersey, respectively, and each

maintains personal savings and checking accounts with defendant. Am. Compl. ¶¶

12-26, ECF No. 30.

    Defendant Bank of America is joint owner of Early Warning Services, LLC, a

privately-held financial services company whose principal asset is Zelle. *Id.* ¶¶ 27-

28. Zelle is a popular money payment platform that facilitates peer-to-peer ("P2P")

instant payment services. *Id.* ¶ 28. Defendant has in turn integrated Zelle into

defendant's online and mobile banking platforms; therefore, defendant's account

holders have access automatically to Zelle when they open an account with

defendant. *Id.* ¶¶ 28-29, 45. Although Zelle is similar to other P2P payment

platforms, such as Venmo or Paypal, Zelle possesses one crucial difference:

instantaneous payment.  *Id.* ¶ 43.  So, when a user attempts to transfer funds via Zelle, the transfer goes immediately from bank account to bank account, and no entity holds the funds while the transaction is verified or before the funds are collected by the recipient.  *Id.*

Each plaintiff alleges that Zelle was used to transfer funds fraudulently from their accounts with defendant, and that defendant's response to the transfers violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r.  *Id.* ¶¶ 8, 12-26.  As an illustrative example, Georgion alleges that in April 2022 she received a phone call from an individual identifying themself as an employee of defendant.  *Id.* ¶ 13.  That individual stated that they were investigating suspicious transactions to Georgion's account.  *Id.*  In that conversation, Georgion was deceived into providing account information to protect herself against the fictitious suspicious transaction.  *Id.*  Immediately thereafter, $2,000 was transferred out of her checking account via Zelle.  *Id.*  Georgion alleges that she did not initiate or authorize the transaction.  *Id.*

Then, after plaintiffs reported the transactions to defendant, plaintiffs allege that defendant (1) investigated and concluded that the transactions in question were not "unauthorized transactions"; (2) failed to provisionally credit plaintiffs' accounts; and (3) failed to reimburse plaintiffs' accounts for the losses incurred.  *Id.* ¶¶ 12-26.

## II.     Plaintiffs' claims

The instant class action complaint asserts violations by defendant of the EFTA and various state consumer protection laws in defendant's use and marketing of the Zelle P2P payment platform.

Plaintiffs' amended complaint asserts ten causes of action.  First, plaintiffs allege that defendant's response to the transactions described in the amended complaint violated various aspects of the EFTA.  *Id.* ¶¶ 131-152.  Plaintiffs allege specifically that such transactions were "unauthorized transactions" under the EFTA and accompanying regulations, and that defendant in violation of the EFTA: (1) "knowingly and willfully failed to fulfill their obligations to investigate Plaintiffs' unauthorized transactions and instead summarily concluded that the transfers of funds via Zelle . . . were not in error," *id.* ¶ 146; (2) "did not investigate and determine whether an error has occurred and report or mail the results of such investigation and determination to [plaintiffs] within ten (10) business days," *id.* ¶ 148; (3) "did not provisionally recredit the consumers' account ten days after receipt of notice of error to investigate, for the amount alleged to be in error pending an investigation," *id.* ¶ 149; and (4) "refused to completely reverse or refund funds to Plaintiffs and Nationwide Class Members consistent with their obligations under Regulation E, § 1005.6."  *Id.* ¶ 150.

In their second and third causes of action, plaintiffs allege that defendant breached the Online Banking Service Agreement ("OBSA") and the implied covenant of good faith and fair dealing by "failing to maintain the safety and

security of Plaintiffs' and Class Members' online banking, and by holding Plaintiffs and Class Members liable for unauthorized Zelle transfers." *Id.* ¶¶ 156, 161. In their fifth and ninth causes of action, plaintiffs assert that defendant violated the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, and the New York General Business Law, N.Y. Gen. Bus. Law § 350, in "misrepresenting" defendant's online and mobile banking services as "safe" and "secure," and by misrepresenting that "customers will not be liable for unauthorized transactions." *Id.* ¶¶ 182-187, 212-216. In their fourth, sixth, eighth and tenth causes of action, plaintiffs allege that defendants violated certain consumer protection laws of California, Cal. Bus. & Prof. Code § 17200, South Carolina, S.C. Code § 39-5-20, New York, N.Y. Gen. Bus. Law § 349, and New Jersey, N.J. Stat. Ann. § 56:8-2, by, inter alia, "knowingly and intentionally making false or misleading representations that its online and mobile banking was 'safe' and 'secure', that Zelle was safe and secure, and that BOA customers would not held liable for unauthorized transactions." *Id.* ¶¶ 169-181, 188-195, 202-211, 217-226. Finally, in their seventh cause of action, plaintiffs allege that defendant breached the OBSA "with fraudulent intent" in violation of South Carolina law. *Id.* ¶¶ 196-201.

## III. The Memorandum and Recommendation

Defendant filed a motion to dismiss all of plaintiffs' claims, and this court referred the motion to the Magistrate Judge. Def. Bank of America, N.A.'s Br. in Supp. of its Mot. to Dismiss the First Am. Class Action Compl. ("Def. Br. on Mot. to Dismiss"), ECF No. 31-1. The Magistrate Judge recommended in the M&R that the

court grant in part and deny in part defendant's motion. M&R at 36-37, ECF No. 45. The M&R recommended specifically that the court grant defendant's motion with respect to plaintiffs' claims for: (1) breach of the implied covenant of good faith and fair dealing under South Carolina and Michigan law; (2) violation of the California FAL; (3) violations of the South Carolina Unfair and Deceptive Trade Practices Act ("SCUTPA") brought in plaintiff Georgion's representative capacity; and (4) violation of New York False Advertising law ("NY GBL § 350"). *Id.* The Magistrate Judge recommended that the court deny defendant's motion with respect to plaintiffs' claims for (1) violation of the EFTA; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing under New York, California and New Jersey law; (4) violation of California Unfair Competition Law ("CA UCL"); (5) violation of the SCUTPA brought in Georgion's individual capacity; (6) breach of contract with fraudulent intent under South Carolina law; (7) violation of New York Consumer Fraud law ("NY GBL § 349"); and (8) violation of New Jersey Consumer Fraud Act ("NJCFA"). *Id.*

On April 3, 2024, defendant filed its objections to the M&R. Def. Bank of America, N.A.'s Objs. to the Mem. and Recommendation of the U.S. Magistrate Judge ("Def. Br."), ECF No. 48. Defendant objects to the M&R on two grounds. First, defendant asserts that the M&R erred in permitting plaintiffs to pursue their breach of contract claims based on the theory that defendant failed to maintain the

"safety and security" of plaintiffs' accounts.[1]  *Id.* at 5-8.  According to defendant, there is no "safe and secure" provision in the contract.[2]  *Id.* at 7.

Second, defendant objects to the M&R's recommendation with respect to plaintiffs' deceptive trade practices claims under New York, New Jersey, South Carolina and California law.  *Id.* at 8-12.  According to defendant, each of these claims requires "a showing that Plaintiffs' harms were caused by, or resulted from, the allegedly deceptive statements."  *Id.* at 3.  Defendant asserts that plaintiffs cannot maintain these claims because plaintiffs "fail to make any allegation that they saw the allegedly deceptive statements or that those statements caused Plaintiffs' injuries."[3]  *Id.*

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331 and jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

A district court may assign dispositive pretrial motions, including a motion to dismiss, to a magistrate judge for "proposed findings of fact and recommendations."

---

[1] As stated above, plaintiffs alleged that defendant breached the OBSA by: (1) failing to maintain the safety and security of plaintiffs' and class members' online banking; and (2) holding plaintiffs and class members liable for unauthorized Zelle transfers.  Am. Compl. ¶¶ 156, 161.

[2] Defendant does not object to the M&R's conclusion that plaintiffs alleged plausibly that defendant breached the OBSA by holding plaintiffs liable for unauthorized Zelle transfers.

[3] Defendant does not object to the M&R's conclusions that plaintiffs alleged plausibly "unfair" and "unlawful" trade practices under the CA UCL.  Defendant objects only to the extent that plaintiffs rely on allegedly "fraudulent" or "deceptive" trade practices on the part of defendant.

28 U.S.C. § 636(b)(1)(A)-(B).  Under Federal Rule of Civil Procedure ("FRCP")

72(b)(2), after a magistrate judge issues their recommendations with respect to a

dispositive motion, "a party may serve and file specific written objections to the

proposed findings and recommendations" of a magistrate judge.  Then, the district

court "must determine de novo any part of the magistrate judge's disposition that

has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may

accept, reject, or modify the recommended disposition; receive further evidence; or

return the matter to the magistrate judge with instructions."  *Id.*; 28 U.S.C. §

636(b)(1).  However, "when objections to strictly legal issues are raised and no

factual issues are challenged, de novo review of the record may be dispensed with."

*Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).

       To withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  On a motion to dismiss, the court can

"consider not only the complaint itself, but also 'documents attached [sic] or

incorporated into the complaint.'"  *Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir.

2024) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435,

448 (4th Cir. 2011)).  The Supreme Court has held that "[w]hile a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted and third alteration in original). "[A]llegations must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

## I.  Whether the court may dismiss in part plaintiffs' claims for breach of contract and deceptive trade practices

The court examines first whether it may consider defendant's arguments that plaintiffs' claims for breach of contract and violation of the CA UCL should be dismissed "to the extent" those claims rely on unviable theories of relief. Def. Br. at 2-3.

Plaintiffs argue that defendant's objection is procedurally improper in requesting that the court dismiss plaintiffs' claims "to the extent" that the claims rest on legally unsustainable theories of relief. Pls.' Resp. to Def.'s Objs. to the Mem. and Recommendation of the U.S. Magistrate Judge ("Pl. Br.") at 10-11, ECF No. 49. Plaintiffs rely primarily on *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015), for the proposition that "piecemeal dismissals" are improper under FRCP 12(b)(6), which permits a cause of action to be dismissed only in its entirety. Pl. Br. at 10-11. So, according to plaintiffs, where a plaintiff has pleaded adequately as to one theory of recovery, the claim in its entirety must be permitted to proceed — even where the cause of action alleges separately and independently a theory of recovery that would be dismissed if the theory had been alleged on its own. *Id.* In this case, plaintiffs assert that because they have pleaded adequately

(1) breach of contract based on defendant holding plaintiffs liable for allegedly unauthorized transactions; and (2) a violation of the CA UCL based on "unlawful" and "unfair" trade practices, those claims should be permitted to proceed in their entirety.  *Id.*

Defendant responds that "courts regularly dismiss claims to the extent that they are based on particular legal theories."  Def. Bank of America, N.A.'s Reply Br. in Supp. of its Objs. to the Mem. and Recommendation of the Magistrate Judge ("Def. Reply Br.") at 1, ECF No. 51.  Defendant asserts that "[t]he law does not permit Plaintiffs to pursue a meritless contract-breach claim, must less to take discovery on that phantom theory, simply because Plaintiffs grouped two contract-breach claims as a single cause of action."  *Id.* at 2.

The court concludes that the Federal Rules of Civil Procedure do not preclude the court from dismissing a claim to the extent that that claim rests on an unviable theory of relief.

To start, the cases on which plaintiffs rely are inapposite.  In plaintiffs' primary case, *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015), the Seventh Circuit opined that the district court in that case improperly granted an FRCP 12(c)[4] motion for judgment on the pleadings as to "*certain elements* of the doctrinal test applicable to [plaintiffs'] First Amendment claim."  *Id.* at 323, 325.  But there, the Seventh Circuit noted that the First Amendment inquiry required that the city

---

[4] The standard under FRCP 12(c) is the same as the standard under FRCP 12(b)(6). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

show three elements in the conjunctive to defeat plaintiffs' First Amendment

challenge.  *Id.* at 323.  The court concluded that the district court's decision to grant

the city's FRCP 12(c) motion with respect "steps one and two" of the three-element

test was procedurally "improper," as "Rule 12(b)(6) doesn't permit piecemeal

dismissal of *parts* of claims."  *Id.* at 323, 325.

Here, by contrast, defendant does not request dismissal of certain elements of a

single claim.  Rather, the two claims before the court as fashioned by plaintiffs each

contains separate and independent theories of relief supported by independent

factual allegations.  *See IBM Corp. v. Priceline Grp Inc.*, No. 15-137-LPS-CJB, 2017

WL 1349175, at *6-7 (D. Del. Apr. 10, 2017) (distinguishing *BBL, Inc.* on similar

grounds).  As a result, the reasoning of the court in *BBL, Inc.* is inapplicable to the

instant motion to dismiss.

Moreover, courts routinely dismiss breach of contract claims "in part" and to

the extent that the claim relies on a legally unsustainable theory of relief.  *Harley*

*Marine NY, Inc. v. Moore*, 716 F. Supp. 3d 21, 32-36 (N.D.N.Y. 2024) (granting

motion to dismiss breach of contract claim with respect to alleged breach of non-

solicitation provision but not with respect to alleged breach of confidentiality

provision); *see Pro Water Sols., Inc. v. Angie's List, Inc.*, 19-cv-08704-ODW, 2021 WL

4288520, at *4 (C.D. Cal. Sept. 21, 2021) (noting that the breach of contract cause of

action "constitute[s] two separate and distinct subclaims" and therefore

"bifurcat[ing] analysis of the breach of contract claim"); *see also Goldman v. Atlas*,

837 F. Supp. 2d 796 (N.D. Ill. 2011) (addressing a breach of contract claim with two

breaches and examining the sufficiency of each alleged breach in turn); *Midas Green Techs., LLC v. Edge Data Sols., Inc.*, 23-CV-159-DAE, 2024 WL 3221942, at *5 (W.D. Tex. Jan 9, 2024); *Chabria v. EDO Western Corp.*, No. 2:06-CV-00543, 2007 WL 582293, at *7 (S.D. Ohio Feb. 20, 2007); *Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, 18-cv-382, 2019 WL 3776450, at *4 (E.D. Tex. Aug. 12, 2019).

In the instant case, plaintiffs' breach of contract claim rests on alleged breaches of two independent provisions of the OBSA. The proper interpretation of a contract is a question of law. *Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987). The court is capable of examining the legal sufficiency of each, independent of the other. *See Harley Marine*, 716 F. Supp. 3d at 32-36.

The same principle applies to plaintiffs' claim under the CA UCL. As described *infra* Section III.C.1, the CA UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. And "[e]ach prong of the UCL is a separate and distinct theory of liability" and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). So, factual allegations in a complaint may give rise to a plausible claim for relief under one of the three prongs, but not the others. Similar to breach of contract claims, courts regularly dismiss a claim based on certain prongs of the CA UCL while allowing claims based on other prongs to proceed. *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047-53 (S.D. Cal. 2018) (granting motion to dismiss with respect to fraudulent and unlawful prongs but not with respect to the unfair

prong); *Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1051 (N.D. Cal. 2023) (granting dismissal of unfair and fraudulent "theories of liability" but denying dismissal of "unlawful prong"); *Tristan v. Bank of Am.*, No. SA CV 22-01183-DOC-ADS, 2023 WL 4417271, at *6 (C.D. Cal. June 28, 2023).[5]  To survive a motion to dismiss, plaintiffs are required "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  To permit a plaintiff to proceed to discovery on a claim for "fraudulent" practices where that plaintiff has stated a plausible claim to relief for only "unlawful" or "unfair" practices would violate pleading standards under FRCP 8(a).  *See Iqbal*, 556 U.S. at 678-679.

In sum, the court concludes that it may examine whether plaintiffs have pleaded adequately (1) breach of contract based on the alleged failure of defendant to maintain the "safety and security" of plaintiffs' online banking; and (2) "fraudulent" trade practices under the CA UCL.

## II.　　Breach of contract

### A.　　Background

Plaintiffs allege that defendant breached the OBSA by: (1) "failing to maintain the safety and security of Plaintiffs' and Class Members' online banking";

---

[5] On this point, many federal courts apply FRCP 9(b)'s heightened pleading standard to only the "fraudulent" prong of the CA UCL but not to the "unlawful" or "unfair" prongs.  *See* Fed. R. Civ. P. 9(b) (requiring that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud").  Plaintiffs' pleading theory would allow a plaintiff to circumvent the FRCP's more stringent requirements for claims sounding in fraud by permitting a plaintiff to maintain a CA UCL claim under the fraudulent prong of the UCL merely because that plaintiff pleaded adequately a claim for "unlawful" or "unfair" acts or practices.

and (2) "holding Plaintiffs and Class Members liable for unauthorized Zelle transfers." Am. Compl. ¶ 156.

In its motion to dismiss, defendant argued that plaintiffs failed to allege plausibly a breach of contract on either theory of relief. Def. Br. on Mot. to Dismiss at 22-25. First, defendant asserted that plaintiffs "do not identify any contract language making any specific promises with respect to 'safety' or 'security' in the OBSA, the only operative contract at issue." *Id.* at 23 (citing Am. Compl. ¶¶ 79-83). Second, defendant contended that it did not breach the OBSA in holding plaintiffs liable for the transactions at issue. *Id.* Rather, defendant maintained that it investigated plaintiffs' claims as provided in the OBSA but concluded that the transactions were not in fact "unauthorized." *Id.* According to defendant, "Plaintiffs simply disagree with the Bank's conclusion that their transactions were not unauthorized." *Id.*

In the M&R, the Magistrate Judge noted defendant's arguments that "Plaintiffs fail to identify any contractual provision promising 'safety and security,' and that the Bank fulfilled its contractual obligation to investigate the Transfers." M&R at 19. However, in ruling on the motion to dismiss with respect to this cause of action, the M&R mentioned only that plaintiffs had adequately pleaded breach of contract based on the theory that "the Bank 'promised in its contract with each Plaintiff, "You will have no liability for unauthorized transactions if you notify [the Bank] within 60 days after the statement showing the transaction."'" *Id.* (quoting Pls.' Opp'n to Def. Bank of America N.A.'s Mot. to Dismiss the First Am. Class

Action Compl. ("Pls. Resp. Def. Mot. to Dismiss") at 2, ECF No. 33). The M&R did not examine, and did not reach a conclusion expressly with respect to, whether plaintiffs had pleaded adequately that defendant breached a provision in the OBSA that obligated defendant to maintain the safety and security of plaintiffs' online banking. *Id.* at 19-20.

**B.    Analysis**

The court turns to whether plaintiffs have alleged plausibly that defendant breached an obligation under the OBSA to maintain the "safety and security" of plaintiffs' online banking.

Defendant argues that plaintiffs' complaint fails to "identify *any* language in the OBSA making promises with respect to the generalized 'safety' or 'security' of online banking." Def. Br. at 7 (citing Am. Compl. ¶¶ 79-83). Defendant adds that plaintiffs waived any argument pertaining to an alleged "safety and security" provision in the OBSA due to plaintiffs' failure to respond to this argument in their response to defendant's motion to dismiss. *Id.* at 7-8.

Plaintiffs rely in response on "Defendant's numerous marketing and website advertisements" that plaintiffs allege "are reasonably understood to be incorporated into the contract by its expressed terms." Pls. Br. at 12. Plaintiffs point to certain language in the OBSA in which defendant states: "We make security and the protection of your information a top priority." *Id.* at 12-13. Plaintiffs note also that the OBSA states: "Our liability policy regarding unauthorized Online banking transactions on consumer deposit accounts may give you more protection, provided

you report the transactions promptly." *Id.* at 13 (quoting Am. Compl. ¶ 79). According to plaintiffs, "[t]he advertised 'security' of their online banking is reasonably understood by consumers to have been made part of the agreement and a part of their 'liability policy regarding unauthorized banking transactions' that provides 'more protection' than the EFTA." *Id.*

The court concludes that plaintiffs have failed to allege plausibly that defendant breached an obligation under the OBSA to maintain the "safety and security" of plaintiffs' online banking.

To survive a Rule 12(b)(6) motion to dismiss plaintiffs' breach of contract claim, plaintiffs are required to allege plausibly: "(1) the existence of an agreement, (2) adequate performance of the contract by [plaintiffs], (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001); *Hall v. Youtube, LLC*, No. 24-CV-04071-WHO, 2025 WL 1482007, at *4 (N.D. Cal. May 5, 2025) ("Courts have consistently dismissed breach of contract claims where plaintiffs fail to allege the relevant promise or term that was supposedly breached."); *Minisohn Chiropractic & Acupuncture Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*, No. CV 23-01341 (GC) (TJB), 2023 WL 8253088, at *5 (D.N.J. Nov. 29, 2023) ("To state a claim for breach of contract, plaintiffs must 'plead or

otherwise identify a contractual provision, requirement, or duty . . . breached' and cannot rely solely on an alleged 'general obligation' without tying it to a specific contractual provision." (alteration in original) (citation omitted)); *Gentry v. Bioverativ U.S. LLC*, No. 2:19-CV-00873-SAL, 2021 WL 9978603, at *5 (D.S.C. Mar. 29, 2021) (dismissing breach of contract claim where "Plaintiff fail[ed] to identify any provisions" in the relevant agreements that supported the alleged breach).

Here, plaintiffs' complaint alleges that defendant "breached the [OBSA] by failing to maintain the safety and security of Plaintiffs' and Class Members' online banking." Am. Compl. ¶ 156. However, the complaint does not identify any specific language in the OBSA that could constitute such a "general obligation" on the part of defendant. *Minisohn Chiropractic*, 2023 WL 8253088 at *5. Plaintiffs concede as much. Pls. Br. at 12 (acknowledging that a safety and security promise is "not specifically in the contract itself"); *see also* Def. Br. on Mot. to Dismiss, Ex. 3 ("OBSA"). At the pleading stage, plaintiffs are required to "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *McGrath v. Arroyo*, No. 17-CV-1461 (NGG), 2019 WL 3754459, at *16 (E.D.N.Y. Aug. 8, 2019) (citation omitted). Because plaintiffs have not identified a contractual obligation on the part of defendant to "maintain the safety and security" of plaintiffs' online banking, plaintiffs have failed to allege plausibly a breach of contract on this basis.

In sum, the court modifies the M&R and concludes that plaintiffs have failed to allege plausibly breach of contract based on the theory that defendant breached an obligation to maintain the safety and security of plaintiffs' online banking.

## III.    Consumer protection claims

### A.    Background

In their amended complaint, plaintiffs allege that defendant violated the CA UCL, the SCUTPA, NY GBL § 349 and the NJCFA.  Am. Compl. ¶¶ 169-181, 188-195, 202-211, 217-226.  Plaintiffs allege specifically that defendant made both affirmative misrepresentations and material omissions with respect to Zelle and the safety and security of plaintiffs' online banking.  *Id.*

In its motion to dismiss, defendant argued that plaintiffs fail to state claims under any of the consumer protection statutes.  Def. Br. on Mot. to Dismiss at 13.  According to defendant in that motion, each statute prohibits "unfair competition," including "acts or practices which are unlawful, or unfair, or fraudulent."  *Id.*  Defendant asserted that "Plaintiffs have failed to allege a cognizable claim under any prong."  *Id.*

As to the allegation of "fraudulent" or "deceptive" practices, defendant contended that plaintiffs "have not alleged any fraudulent practice because the Bank did not make any statements likely to deceive a reasonable consumer or that caused Plaintiffs any injury."  *Id.*  On this point, defendant asserted that this prong requires plaintiffs to plead that the alleged misrepresentation by defendant caused plaintiffs' injuries, or that they relied in some way on the defendant's

misrepresentations. *Id.* at 11-12, 14. Because plaintiffs' complaint is lacking in such specific allegations, defendant contended that the claims must be dismissed. *Id.* at 13-14.

Then, with respect to allegedly "unfair" practices, defendant argued that plaintiffs "have not alleged any conduct that was unfair or contrary to public policy." *Id.* at 13. Defendant added that the CA UCL, the SCUTPA and the NJCFA all "require a showing of causation," and "Plaintiffs' alleged injuries were not caused by any unfair practice of the Bank," but instead "resulted from the actions of criminal third parties." *Id.* at 14-15. Finally, as to the "unlawful" prong, defendant asserted that plaintiffs "have not alleged violations of any other laws." *Id.* at 13. Accordingly, defendant maintained that plaintiffs failed to plead adequately a claim to relief under any of the four state law consumer protection statutes. *Id.*

In the M&R, the Magistrate Judge examined plaintiffs' allegations with respect to each prong. M&R at 28-32. The court addressed first the deception prong. *Id.* at 29-30. The court noted that "fraudulent or deceptive conduct" under the law of each state "incorporates a 'reasonable consumer' or 'similar' standard." *Id.* The court concluded that "arguments premised on whether a 'reasonable consumer' would be deceived by the Bank's representations are more appropriately considered on a more complete record." *Id.* at 30. For that reason, the court rejected defendant's contention that plaintiffs cannot state a claim based on allegedly fraudulent or deceptive conduct. *Id.*

Turning to the "unfair" prong, the court stated first that it did not read "the Amended Complaint as asserting claims under either South Carolina law or New Jersey law for 'unfair' trade practices," because those claims "are premised on the theory that the Bank's practices were 'deceptive.'" *Id.* at 31.  Then, as to plaintiffs' reliance on the CA UCL, the court stated that plaintiffs had alleged plausibly "unfair acts" in alleging that defendant "declined to reverse fraudulent charges on the accounts of Plaintiff Silverlight . . . despite marketing representations, contract promises, and statutory obligations pursuant to EFTA." *Id.* (alteration in original). In response to defendant's argument that any harm suffered by Plaintiffs was caused by third parties, the court noted that "Plaintiffs have also alleged that the Bank had a practice of denying claims based on Zelle transfers without conducting a reasonable investigation." *Id.*  For those reasons, the court recommended that plaintiffs' claim for "unfair" practices under the CA UCL be permitted to proceed. *Id.*  Finally, the court concluded also that plaintiff Silverlight alleged adequately "unlawful" conduct under the CA UCL by reason of defendant's alleged violations of the EFTA.  *Id.* at 32.

### B.    Legal framework

The CA UCL prohibits "any unlawful, unfair or fraudulent business act or practice," and each prong provides for a separate theory of liability under the law. Cal. Bus. & Prof. Code §§ 17200, 17500; *Rojas-Lozano v. Google, Inc.*, 159 F Supp. 3d 1101, 1117 (N.D. Cal. 2016) ("Each of the three 'prongs' of the UCL provides a

'separate and distinct theory of liability' and an independent basis for relief."

(quoting *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012)).

The SCUTPA "declare[s] unlawful" any "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.

Code Ann. § 39-5-20(a).

NY GBL § 349 similarly "declare[s] unlawful" any "[d]eceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of

any service" in the state of New York. N.Y. Gen. Bus. Law § 349(a). To state a

claim under § 349, "a plaintiff must allege that a defendant has engaged in (1)

consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage,*

*Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (internal quotation

marks and citations omitted).

The NJCFA states that use by any person "of any commercial practice that is

unconscionable or abusive, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any

material fact with intent that others rely upon such concealment, suppression or

omission . . . is declared to be an unlawful practice." N.J. Stat. Ann. § 56:8-2.

### C.    Analysis

The court turns to defendant's objections to the M&R's recommendation that

plaintiffs' claims for "fraudulent" or "deceptive" practices under the laws of

California, New York, New Jersey and South Carolina be permitted to proceed.

Defendant asserts that the "fraudulent" prong of each of the four statutes — the CA UCL, NY GBL § 349, the NJCFA and the SCUTPA — requires that plaintiffs plausibly allege reliance or causation to survive a motion to dismiss. Def. Br. at 8. Because plaintiffs allege only that defendant's "Zelle-related marketing is 'likely to deceive members of the public'" — but not that "any of the Plaintiffs saw any of the Bank's allegedly deceptive statements" — defendant argues that plaintiffs' claims for "fraudulent" or "deceptive" trade practices are insufficiently pleaded. *Id.* at 10. Defendant asserts also that these claims "sound in fraud" and are therefore subject to the heightened pleading requirements of FRCP 9(b). *Id.* at 8. As a result, according to defendant, plaintiffs "must plead the 'circumstances' undergirding their causes of action 'with particularity.'" *Id.* at 9 (quoting Fed. R. Civ. P. 9(b)).

Plaintiffs in their response focus primarily on the "unfair" and "unlawful" prongs of the CA UCL. Pls. Br. at 15-16. To the extent that plaintiffs address the "fraudulent" prong of the CA UCL, plaintiffs assert that they were not required to plead that defendant's misrepresentation caused their injury — or that plaintiffs otherwise relied on the misrepresentation — to survive a motion to dismiss. *Id.* at 16.

As to NY GBL § 349, the NJCFA and the SCUTPA, plaintiffs assert that the statutes "do 'not require proof of actual reliance.'" *Id.* at 17 (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)). Plaintiffs contend that to allege plausibly a claim for "deceptive" practices under these state laws, a

plaintiff is required to allege only that "a reasonable consumer" would "be deceived." *Id.* at 16.

The court concludes for the reasons below that plaintiffs have failed to plausibly allege "fraudulent" or "deceptive" practices under any of the state statutes. The court addresses each state law in turn.

### 1.    CA UCL

The court begins with the CA UCL. The CA UCL prohibits "unfair competition," which is defined to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Section 17204 grants a cause of action to "a person who has suffered injury in fact and has lost money or property *as a result* of the unfair competition." *Id.* § 17204 (emphasis supplied). "When the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to state a claim for relief." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (citing *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)); *In re Tobacco II Cases*, 207 P.3d at 39 ("Therefore, we conclude that this language imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.").

To establish reliance, "a plaintiff must show that the misrepresentation was the immediate cause of the injury-producing conduct." *In re Tobacco II Cases*, 207

P.3d at 39.  "In other words, the plaintiff 'must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made.'  *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 987 (E.D. Cal. 2018) (quoting *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 888 n.10 (Cal. 2011)).

Plaintiffs' amended complaint fails to state a claim under the CA UCL's fraudulent prong because plaintiffs do not allege actual reliance on any purported misrepresentations or nondisclosures on the part of defendant.  Plaintiffs allege that defendant's practices "constitute 'fraudulent' business practices in violation of the UCL because, among other things, Defendant Bank of America's marketing regarding its online banking and Zelle services states the Bank will protect against, and guarantees no liability for, unauthorized transfers."[6]  Am. Compl. ¶ 172. Plaintiffs allege also that defendant "concealed the security risks of using the Bank of America online banking and mobile app after integrating the Zelle service."  *Id.* ¶ 173.  But plaintiffs' complaint contains no allegation that any of the representative plaintiffs were exposed to the marketing materials or advertisements that allegedly

---

[6] Plaintiffs characterize defendant's alleged failure to reimburse plaintiffs' accounts for allegedly unauthorized transactions as both a misrepresentation and an omission.  Am. Compl. ¶ 76 (stating that defendant "promises its customers" that they are not liable for unauthorized transactions); *Id.* ¶ 222 (stating that defendant "conceal[ed] . . . the risk that unauthorized transactions via Zelle will not be reimbursed"); Pl. Resp. Def. Mot. to Dismiss at 19 (referencing defendant's alleged misrepresentations that "the consumer is not liable for any 'fraudulent' or unauthorized transactions").  The court construes this alleged violation of the relevant consumer protection laws as an affirmative misrepresentation, rather than an omission.

misrepresented the security risks of defendant's online banking platform or that allegedly unauthorized transfers would be reimbursed. In the absence of any actual reliance on the part of plaintiffs, plaintiffs' allegations under the fraudulent prong of the CA UCL fail to state a claim under California law.[7]

Accordingly, plaintiffs have failed to state a claim under the "fraudulent" prong of the CA UCL.[8]

### 2.    NY GBL § 349

The court addresses next plaintiffs' claim for deceptive acts or practices under NY GBL § 349.

To state a claim under NY GBL § 349, plaintiffs are required to allege that (1) defendant's acts were consumer oriented, (2) the acts or practices are "deceptive or misleading in a material way," and (3) plaintiff was injured as a result. *Oswego*

---

[7] The Ninth Circuit has held that the heightened pleading requirements of FRCP 9(b) apply to claims under the fraudulent prong of the CA UCL. *Vegetable Juices, LLC v. Haliburton Int'l Foods, Inc.*, No. 24-3595, 2025 WL 1420339 (9th Cir. May 16, 2025). However, because the court concludes that plaintiffs' fraudulent claim is insufficient under the ordinary pleading standards of FRCP 8(a), the court does not address the application of FRCP 9(b).

[8] Plaintiffs do not argue in their response to defendant's objections that defendant's failure to disclose any safety risk associated with defendant's online banking caused their injury. *See* Pls. Br. Plaintiffs' complaint also does not allege nondisclosures or omissions in the context of the fraudulent practices allegations under the CA UCL. *See* Am. Compl. However, to the extent that plaintiffs rely on any alleged nondisclosures or omissions by defendant related to the safety and security of defendant's online banking, such a claim is not pleaded adequately. *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919-20 (C.D. Cal. 2010) (dismissing CA UCL claim for lack of reliance where the complaint was "devoid of allegations that Plaintiff would have plausibly been aware" of the allegedly material omission prior to purchasing the product in question).

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741,

744 (N.Y. 1995). In stating a claim under NY GBL § 349, plaintiffs are required to

allege "actual injury caused by Defendant's statements." *Goldemberg v. Johnson &*

*Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).

"[T]o plead a § 349 or § 350 claim successfully, [p]laintiffs must allege that

they saw the misleading statements of which they complain before they purchased

or came into possession of" the relevant product. *Morales v. Apple, Inc.*, No. 22-CV-

10872 (JSR), 2023 WL 5579929, at *3 (S.D.N.Y. Aug. 29, 2023) (alterations in

original) (quoting *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226,

240 (S.D.N.Y. 2020)); *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App.

Div. 2004) ("Although the plaintiff cites particular misleading statements by IBM

regarding the reliability of the IBM [product], he nowhere states in his complaint

that he saw any of these statements before he purchased or came into possession of

[the product]."); *Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL 1656593, at *3

(2d Cir. May 25, 2022) (summary order).

The court concludes that plaintiffs have failed to state a claim under NY GBL

§ 349.

Plaintiffs allege that defendant misrepresented or made misleading

statements in defendant's "advertisements that its services were safe and secure."

Am. Compl. ¶ 206. Plaintiffs allege also that defendant misrepresented "that it will

protect accountholders [sic] who incur unauthorized transfers." *Id.* ¶ 207.

However, as described above, plaintiffs' complaint is silent with respect to whether

plaintiffs actually saw or were ever exposed to the allegedly misleading statements or misrepresentations. *See Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 719-20 (S.D.N.Y. 2025) (denying motion to dismiss NY GBL § 349 claim where plaintiffs alleged that they "relied on [defendant's] personal assurance, along with the extensive marketing campaign"). In the absence of such allegations, plaintiffs have failed to allege plausibly a claim based on misrepresentation under NY GBL § 349.

Plaintiffs' claim under § 349 that defendant omitted material information or "failed to disclose material facts" fares no better. "[A] plaintiff bringing an omission-based claim for § 349 liability must show that 'the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (summary order) (second and third alterations in original) (quoting *Oswego Laborers Loc. 214 Pension Fund*, 647 N.E.2d at 745).

Here, plaintiffs allege that defendant "knows that Zelle is not secure" and that "bad actors are routinely hacking into consumers [sic] accounts." Am. Compl. ¶¶ 67, 69. Plaintiffs allege also that defendant "fail[ed] to disclose material facts regarding the true risks of using the BOA online banking and mobile service" platform, and "fail[ed] to disclose material facts regarding the true risks of Zelle." *Id.* ¶ 204. But plaintiffs do not allege that defendant alone possessed the material

information, or that plaintiffs could not have reasonably obtained such information. *See id.*; *see also Morales*, 2023 WL 5579929, at *3 (dismissing omission-based NY GBL § 349 claim where the complaint "[did] not allege that defendant itself possessed material information").[9]

Even if the complaint had included such allegations, it is unlikely they would be plausible given the express language included in the OBSA. Plaintiffs' omission-based claim amounts to an allegation that defendant failed to disclose that defendant's online banking platform permits seamless and instantaneous transfers and is thereby susceptible to fraud. But plaintiffs' allegation is contradicted by the express terms of the OBSA. The OBSA informs account holders that "when you send the payment, you will have no ability to stop it. . . . If the person you sent money to has already enrolled with Zelle . . . the money is sent directly to their bank account . . . and may not be canceled or revoked." OBSA at 10. The OBSA states

---

[9] In *Morales*, the court rejected for similar reasons an omission-based claim under NY GBL § 349:

> To "state a claim for omission under the GBL[,] . . . the business alone [must] possess[ ] material information that is relevant to the consumer and [then] fail[ ] to provide th[at] information." *Dixon v. Ford Motor Co.*, 14-cv-6135, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015). *Accord Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 104 (S.D.N.Y. 2022). Here, the FAC does not allege that defendant itself possessed material information; rather, the FAC alleges that it supposedly has been known for decades that pulse oximetry can be inaccurate for individuals with darker skin tones. *See* FAC, ¶¶ 6-9. The FAC thus does not adequately plead a GBL claim premised on omissions.

*Morales v. Apple, Inc.*, No. 22-CV-10872 (JSR), 2023 WL 5579929, at *3 (S.D.N.Y. Aug. 29, 2023) (alterations in original).

also: "THE SERVICE IS INTENDED FOR SENDING MONEY TO FAMILY, FRIENDS AND OTHERS WHOM YOU TRUST. YOU SHOULD NOT USE ZELLE TO SEND MONEY TO RECIPIENTS WITH WHOM YOU ARE NOT FAMILIAR OR YOU DO NOT TRUST." *Id.* In other words, the risks of fraud that plaintiffs allege defendant concealed were disclosed in the OBSA by its express terms.

Accordingly, plaintiffs have failed to allege plausibly a claim under NY GBL § 349.

### 3. NJCFA

The court turns next to the NJCFA. The NJCFA "authorizes a statutory remedy for '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.'" *Capital Health Sys., Inc. v. Symmetry Workforce Sols., LLC*, No. 24-CV-00202-ESK-MJS, 2025 WL 1554256, at *4 (D.N.J. June 2, 2025) (alteration in original) (citation omitted). To state a claim under the NJCFA, "a plaintiff must allege: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *2 (3d Cir. Apr. 28, 2025) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). The NJCFA defines "unlawful practice" as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, *or* the knowing[] concealment, suppression, or omission of any material fact." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)

(alterations in original) (quoting N.J. Stat. Ann. § 56:8-2). New Jersey courts "have been careful to constrain the CFA to 'fraudulent, deceptive or other similar kind of selling or advertising practices.'" *D'Agostino v. Maldonado*, 78 A.3d 527, 540 (N.J. 2013) (quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)).

Similar to NY GBL § 349, a plaintiff asserting a claim under the NJCFA "must demonstrate that the loss suffered is attributable to defendant's unlawful conduct — in essence, was suffered 'as a result of' defendant's violation of the statute — to establish the necessary nexus between the alleged loss sustain[ed] and a defendant's offending behavior." *Parker v. Howmedica Osteonics Corp.*, No. CIV.A. 07-02400 (JLL), 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008) (citation omitted). "Allegations that a plaintiff would not have purchased a product 'but for' the misrepresentation or that they purchased the product 'because of' the misleading claim[] are sufficient to plead causation at this stage." *Donachy v. Playground Destination Props., Inc.*, No. CIV.A. 10-4038 RMB, 2013 WL 3793033, at *6 (D.N.J. July 19, 2013) (collecting cases).

As described above, plaintiffs' complaint contains no such allegations. *Supra* Section III.C.1-2. Plaintiffs allege only that defendant's marketing, advertisements and security guarantees would be misleading to a reasonable consumer. Am. Compl. ¶¶ 217-226. There is no indication in the complaint than any of the plaintiffs, at any time, observed or otherwise were exposed to the allegedly

misleading statements, let alone that any plaintiff opened an account with defendant "because of" the allegedly deceptive guarantees of defendant.[10]  *Id.*

Plaintiffs' omission-based claim under the NJCFA fails as well.  An alleged omission is actionable under the NJCFA where "the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment."  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009) (citing *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 542 (N.J. App. Div. 2003)).  As stated *supra* Section III.C.2, plaintiffs' amended complaint fails at step one: defendant disclosed in the OBSA the material facts surrounding the capability of Zelle to facilitate the immediate transfer of funds as well as the risks of fraud posed by Zelle's integration with defendant's online banking.  *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 517 (D.N.J. 2009) (granting defendant bank's motion to dismiss where a contract "contain[ed] the very information that Plaintiff[] allege[d] was misrepresented, suppressed, or concealed" (second alteration in original)), *aff'd*, 374 F. App'x 341 (3d Cir. 2010).

In sum, plaintiffs have failed to plausibly allege a claim under the NJCFA.

---

[10] The M&R concluded that plaintiffs' amended complaint does not "assert[] claims under either South Carolina or New Jersey law for 'unfair' trade practices."  M&R at 31.  Instead, the M&R construed the SCUTPA and NJCFA claims as "premised on the theory that the Bank's practices were 'deceptive.'"  *Id.*  This court agrees.  *See* Am. Compl. ¶¶ 188-195 (stating that defendant's "actions, statements, and omissions had the capacity or tendency to deceive and mislead" in violation of the SCUTPA); *see id.* ¶¶ 217-226 (stating in the context of the NJCFA that defendant's "practices . . . constitute deceptive and/or fraudulent business practices in violation of the NJCFA").

### 4.    SCUTPA

The court turns last to plaintiffs' claims under the SCUTPA.  To state a claim under the SCUTPA, plaintiffs are required to allege:  "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)."  *RFT Mgmt. Co., LLC v. Tinsley & Adams, LLP*, 732 S.E.2d 166, 174 (S.C. 2012) (alteration in original).

"SCUTPA requires that a private claimant suffer an *actual* loss, injury, or damage, and requires a causal connection between the injury-in-fact and the complained of unfair or deceptive acts or practices."  *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 189 (S.C. 2015).  "Establishing [the] casual connection in a misrepresentation case necessarily requires proof that the plaintiff detrimentally relied on the defendant's deceptive conduct."  *Doe 9 v. Varsity Brands, LLC*, No. CV 6:22-3509-HMH, 2023 WL 4113198, at *11 (D.S.C. June 21, 2023).

Here, plaintiffs do not allege that they viewed any of the complained of misrepresentations or that they otherwise relied on those alleged misrepresentations.  *Supra* Section III.C.1-3.  Accordingly, the court concludes that plaintiffs have failed to plead the requisite "causal connection" between the allegedly deceptive acts or practices and their injury.

In sum, the court concludes that plaintiffs have failed to allege plausibly a claim under the SCUTPA.

## CONCLUSION

The court has reviewed the M&R and, with the exceptions of the conclusions outlined above, accepts the recommendations of the M&R. Accordingly, it is hereby

**ORDERED** that defendant's motion to dismiss plaintiffs' claim under the EFTA is **DENIED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' breach of contract claim is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' CA UCL claim is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' CA FAL claim is **GRANTED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' SCUTPA claim is **GRANTED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' claim for breach of contract with fraudulent intent is **DENIED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' NY GBL § 349 claim is **GRANTED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' NY GBL § 350 claim is **GRANTED**; it is further

**ORDERED** that defendant's motion to dismiss plaintiffs' NJCFA claim is **GRANTED**; and it is further

**ORDERED** that plaintiffs have 30 days to file a second amended complaint.

**SO ORDERED.**

Dated: August 18, 2025                    /s/ Timothy M. Reif
New York, New York                        United States Court of International Trade
                                          *Sitting by Designation*
                                          United States District Court for the
                                          Western District of North Carolina